## No. 28,570.

THE CITY OF TOPEKA, *Appellant,* v. T. B. BOYD, County Treasurer, *Appellee.*

(272 Pac. 124.)

Opinion filed December 8, 1928.

*J. E. Addington* and *Irl H. Byler,* both of Topeka, for the appellant.

*Paul H. Heinz,* county attorney, and *Edward Rooney,* assistant county attorney, for the appellee.

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt, T. M. Lillard, Bruce Hurd* and *O. B. Eidson,* all of Topeka, as *amici curiæ.*

The opinion of the court was delivered by

JOHNSTON, C. J.: The city of Topeka brought this mandamus proceeding against T. B. Boyd, treasurer of Shawnee county, to

compel the transfer by the county treasurer of certain moneys collected by him for the city as taxes from certain banks which made payments under protest. The writ was denied and the city appeals.

In its petition the city alleged that the defendant, acting as treasurer, is required to collect taxes in behalf of the city, and to pay over the same on the 15th day of January, 15th day of April, 15th day of July and the 15th day of October each year to the city treasurer all moneys collected for and payable to the city, and to make an itemized statement of the moneys collected. It is further alleged that Boyd, as treasurer, had collected during the current tax year the sum of $32,235.65, and that he had failed and refused to pay it over to the city treasurer as provided by law. The moneys above mentioned, it was alleged, were provided in the levy of the city commissioners for current expenses, and the failure to pay it over affects the city materially. They therefore prayed the allowance of a writ of mandamus compelling the county treasurer to pay over to the city treasurer the sum of $32,235.65 now held by him.

Defendant answering says that the entire sum asked for represents money collected by the plaintiff as the official tax collector for the county and the city and for money collected under the tax laws from the national banks of Shawnee county; that the law under which the tax was imposed and collected is invalid as to them and that they are entitled to a refund of the difference between 25 cents per hundred dollars and $3.23 per hundred dollars, which was the rate under which the money was raised for the tax year. There was a further allegation that for the purpose of testing the validity of the law the Central National Bank of Topeka filed an action for itself in the district court of the United States for the district of Kansas against the county treasurer to recover the excess taxes illegally collected and that that cause had proceeded to judgment and had been appealed to the circuit court of appeals. There was a further statement that the Merchants National Bank had likewise brought suit against the county and the county treasurer to recover a portion of the fund, asserting the same claims made by the Central National Bank. It is further alleged that it would be a great abuse of the extraordinary remedy of mandamus to require him to pay this money over to the city of Topeka under the circumstances, and particularly so when a judgment has been had holding the tax to be invalid and for a recovery of the money in controversy, thus making him liable on his official bond. When this appeal was submitted

it was conceded that the judgment mentioned had been affirmed by the circuit court of appeals (*McFarland v. Central Nat. Bank,* 26 Fed. [2d] 890) and that the writ of certiorari applied for had been denied by the supreme court of the United States, so that the invalidity of the tax has been finally determined. It appears that some payments of the protested taxes collected by the county treasurer had been turned over to the city treasurer, erroneously as he says, and that he has retained out of subsequent payments enough to reimburse him for that so erroneously disbursed. When the litigation was commenced the treasurer declined to pay over the questioned tax money and set it apart in a separate fund designated by him as "litigated and protested" tax. The result of that litigation was that the assets of the bank were taxable under the intangible tax law at the rate of 25 cents per $100, the same as moneyed capital owned by individual taxpayers, and that the property tax rate imposed and collected, of $3.23 per $100 of valuation, was invalid and that the bank was entitled to recover the illegal excess. As shown that judgment has become final and it is now finally determined that the city is not entitled to the protested tax or any more than the amount derivable under the intangible tax rate.

This being a mandamus proceeding, the question presented is whether a writ should go at the suit of the city to compel the county treasurer to pay to the city the protested invalid taxes which he collected and holds and to which the city has no legal right. The plaintiff calls attention to the statutes governing the making up of a yearly budget by the city commission to provide for the expenses and liabilities of the city for the ensuing year. (R. S. 13-2601.) Upon this budget levies are made and certified to the county clerk to provide the revenues for the next year (R. S. 13-907), and when this is done the city commissioners have no power to increase the amounts so fixed unless the actual revenues shall have exceeded such estimate, in which event the amounts cannot be increased beyond actual revenues. The taxes arising from the levy are to be collected by the county treasurer and paid to the city treasurer in quarterly periods during the year commencing on January 15 (R. S. 13-912), and the law makes the county treasurer the collector of taxes for the county and its municipalities. It is stated that when any considerable amount of the revenue so estimated and provided for is not collected and paid to the city its fiscal affairs are thrown out of balance and it is rendered unable to meet current expenses and

liabilities on bonds that have been issued. No doubt such a circumstance causes inconvenience and embarrassment to the city in conducting the municipal business, but that necessarily occurs in any case where the estimated revenues are based on unauthorized levies and which requires the authorities to provide for the deficit in later levies. A taxpayer has a right to contest an illegal tax, and no officer, county or city, has a right to impose or collect one that is illegal. The validity of the tax in question was promptly challenged by the taxpayer when payment was made under protest. The payment was coercive and made to prevent the seizure and sale of property while the validity of the tax was being judicially tested. The treasurer was duly notified by the protest of the illegality of the tax and later by a decision of a court of competent jurisdiction adjudging it to be illegal. He exercised his judgment in respect to the validity and withheld payment, placing the invalid tax in a special fund to await the result of an appeal or review of the judgment in the appellate courts.

It is argued that the county treasurer was only a collecting agent for the city and it was not his function to sit in judgment as to the validity of the tax paid under protest. Of course, the treasurer would not be required to withhold every tax paid under protest, as groundless protests might be made. The city cites cases to the effect that payment should be turned over by the collector to the municipalities for whose benefit it was levied; leaving the validity of the challenged tax to the courts and the right to its recovery in some subsequent judicial proceeding. (*Ratterman v. The State,* 44 Ohio St. 641; *Craig v. Boone,* 146 Cal. 718.) In these cases it appears that the remedy was sought before the validity of the tax had been adjudged. Here the remedy was sought after it was judicially determined that the tax was illegal and that the city had no right to the money which was still in the hands of the collector. Should a writ of mandamus be issued to compel the payment of money illegally exacted because it was derived from a levy formally but unlawfully made, and is needed by the city to meet municipal expenses and liabilities, the withholding of which will interfere with the estimates of the city for raising revenue and embarrass it in meeting its fiscal obligations? Can the city use this proceeding to enforce the payment of money where it concedes that the money was wrongfully collected? The payment and distribution of the money would mean that the taxpayers must bring a large number of actions

against each of the subordinate municipalities receiving part of this illegal tax to recover it back. Why should the trouble and expense of so much litigation be taken and incurred when the money wrongfully taken may be turned back to the taxpayers by the officer who collected it. In *Hodgins v. Shawnee County Comm'rs*, 123 Kan. 246, 255 Pac. 46, an illegal tax had been collected and in an action for its recovery from the county commissioners they set up that the money illegally obtained had been distributed among the different municipalities and districts, but it was held that this did not constitute a defense and the taxpayer had a right to recover it from the one who illegally collected it. It was said:

"The illegality was brought to the attention of the county by the protest of the plaintiffs before any distribution was made and the tax collected was then in the possession of the county. The county was in the attitude of a person who without authority of law had wrongfully obtained the money of a taxpayer, and it is no defense to it to say that the money had been turned over to another than the one to whom it belonged. The owner of the fund is entitled to recover all of it from the party that extorted it." (p. 250.)

In the present case the officer who collected the unlawful tax still has it in his possession and is in a position to restore it to the parties to whom it belongs and we think should not be directed by mandamus to pay it to another to whom it does not belong.

Whatever the rule might have been if the transaction had proceeded no further than the protest of the taxpayer when the relief was asked, we are of the opinion that the officer should not be compelled by mandamus to pay over illegally collected taxes to a party not entitled to it, and especially where the illegality of the taxes is conceded. The writ of mandamus lies to a great extent in the discretion of the court and in such a case the court is warranted in taking a broad view of the rights of the parties and the public before the writ is granted. (*Kolster v. Gas Co.*, 106 Kan. 84, 186 Pac. 738.) The writ has been refused in an action brought to compel the performance of an act technically legal but which would operate unjustly. (*Railway Co. v. City of Liberal*, 108 Kan. 836, 196 Pac. 1067.)

We decide no more in this case than that under the circumstances herein stated, and in view of the discretion vested in the court, there was no error in denying the writ of mandamus to compel the payment of money to a party not legally entitled to it.

The judgment is affirmed.